**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **TIFFANY DAVIS,**<br><br>        **Plaintiff,**<br>  **v.**<br><br>**CLEVELAND UNLIMITED, INC.,**<br><br>        **Defendant.** | **Case No. 2:09CV1106**<br><br>**Judge Peter C. Economus**<br><br>**MEMORANDUM OPINION AND ORDER** |

**I. PROCEDURAL BACKGROUND**

Plaintiff Tiffany Davis ("Davis") made a dual filing ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") on May 20, 2009. (Dkt. # 26-2 at 8.) On November 19, 2009, the EEOC issued Davis a Notice of Right to Sue. (Dkt. # 2 at 14.) In her Complaint, Davis alleges multiple claims of employment discrimination against Defendant Cleveland Unlimited Inc. d/b/a Revol Wireless ("Revol") pursuant to Title VII of the Civil Rights Act of 1964, as well as multiple state law tort claims. (Dkt. # 2.) On September 14, 2010, the Court granted Davis's Attorney's Motion to Withdraw (Dkt. # 22) and on October 1, 2010, Davis filed a Notice informing the Court that she would be representing herself and not retaining new counsel (Dkt. # 24). This matter is now before the Court upon Revol's Motion for Summary Judgment. (Dkt. # 26.)

**II. FACTUAL BACKGROUND**

In 2006, Revol hired Davis as a Customer Service Representative at Revol's "East Main" dealership location. (Dkt. # 2 ¶ 7.) In June, 2008, Revol promoted her to the position of Retail

Sales Representative.  (Dkt. # 2 ¶ 7.)  On or about April 20, 2009, Revol notified Davis that they were again promoting her to the position of Assistant Manager.  (Dkt. # 2 ¶ 12.)

Davis began her Assistant Manager duties at a new dealership, the "Morse Road" location, on May 4, 2009.  (Dkt. # 2 ¶ 13.)  On that same day, Revol District Manager Tina Patton ("Patton") visited Davis and notified her that Davis's immediate supervisor at the East Main location, Sheila Obeng ("Obeng"), had been fired for making inventory stock transfers that violated Revol's company policies.  (Dkt. # 2 ¶¶ 8, 14-15.)  A Revol internal audit revealed that Obeng, Davis, and another co-worker, Luke Chamberlain ("Chamberlain") had all been involved in a scheme to falsely classify cell phones in order to promote more sales ("restocking scheme").  (Dkt. # 26-4 ¶ 4.)  The individuals involved in the restocking scheme improperly resold cell phones that had been returned as defective.  (Dkt. # 26-4 ¶ 4.)

Patton questioned Davis regarding her involvement in the restocking scheme and Davis acknowledged participating in making the transfers but stated that she had done so at the request of Obeng.  (Dkt. # 2 ¶ 16.)  Although Davis denied knowing that the transfers violated Revol policy, Patton immediately placed Davis on a two day suspension.  (Dkt. # 2 ¶¶ 16, 17.)  Two days later, Patton called Davis to inform her that Revol had decided not to terminate her, but that Revol would rescind her most recent promotion and that she would receive a disciplinary write-up.  (Dkt. # 26-3 ¶ 11.)  According to Patton, upon receiving this information, Davis "responded very angrily, screaming so loudly into the phone that [Patton] had to take the phone away from [her] ear and people standing nearby could hear Ms. Davis yelling."  (Dkt. # 26-3 ¶ 12.)

Patton subsequently ordered Davis to submit to a drug test. (Dkt. # 26-3 ¶ 12.) In her Complaint, Davis contends that this order was a response to Davis alleging that her treatment constituted discrimination. (Dkt. # 2 ¶ 21.) Revol, on the other hand, states that the drug test was ordered as a response to Davis's unusual reaction to hearing the news that she would be disciplined, and that the drug test was ordered before Davis made any allegation of discrimination. (Dkt. # 26-3 ¶ 14; Dkt. # 26-5 ¶ 9.) According to the Revol employee handbook, which is circulated to all Revol employees, drug tests can be required of Revol employees. (Dkt. # 26-5 ¶ 8.)

Revol also investigated Chamberlain for his participation in the restocking scheme. (Dkt. # 26-5 ¶ 4.) Chamberlain is a white male who worked as an Inventory Representative with Davis and Obeng at the East Main location. (Dkt. # 2 ¶ 9.) Chamberlain's position did not include any managerial responsibilities. (Dkt. # 26-1 at 28.) According to Revol, the internal audit showed that Davis participated in the scheme more frequently than Chamberlain and Davis received commissions from each sale/activation of defective phones that were returned, restocked, and resold. (Dkt. # 26-4 ¶ 5; Dkt. # 26-5 ¶¶ 2; Dkt. # 26-1 at 9.) Chamberlain did not receive any such commissions. (Dkt. # 26-5 ¶ 2.)

Davis's suspension lasted one week and was paid. (Dkt. # 26-1 at 21-22; Dkt. # 26-2 at 6.) Prior to the events surrounding this case, Patton had given Davis a favorable performance review and recommended Davis for her promotion to Assistant Manager. (Dkt. # 26-3 ¶ 3.) Following her suspension, Davis was reinstated to her prior position as Sales Representative, and at her request, was transferred back to the East Main location. (Dkt. # 26-1 at 20.)

On May 12, Davis received a final written warning for her involvement in the restocking scheme, which was titled "Associate Counseling Notice." (Dkt. # 2 ¶ 27.) Chamberlain also received an Associate Counseling notice for his participation. (Dkt. # 2 ¶ 28.) On or about June 1, 2009, Revol terminated Chamberlain. (Dkt. # 26-1 at 8.)

### III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While a district court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## IV. LAW AND ANALYSIS

### A. Abandonment

Davis, who is an African American female, alleges race discrimination, sex discrimination, retaliation, negligent retention, and intentional infliction of emotional distress. (Dkt. # 2.) As a threshold matter, it should be noted that Davis's Response to Revol's Motion for Summary Judgment does not directly address any of Revol's legal arguments. (Dkt. # 30.) Instead, Davis makes the following assertion: "Due to lack of material facts, illegal intrusion of privacy and attorney-client privilege (phone tap/wire). Civil Action 2:09-cv-1106 has ultimately been compromised due to the defendantsdespearte (sic) and malicious acts to discourage my efforts in seeking justice." (Dkt. # 30 at 1.) Davis then goes on to recite her version of the facts, without supporting affidavits or deposition testimony, relating to the restocking scheme and Revol's allegedly discriminatory conduct. (Dkt. # 30 at 1.) In addition, Davis has attached exhibits that appear to be Revol inventory stock transfer reports. (Dkt. # 30 at 2-9.)

When a plaintiff asserts claims in a complaint but then fails to delineate those claims in her brief in opposition to summary judgment, those claims are deemed abandoned. *See Clark v. City of Dublin*, 178 Fed. Appx. 522, 524–25 (6th Cir. 2006) (finding that because the plaintiff did not properly respond to the arguments asserted against his age and disability claims in the defendant's motion for summary judgment, the plaintiff had abandoned those claims); *Conner v. Hardee's Food Sys.*, 65 Fed. Appx. 19, 24–25 (6th Cir. 2003) ("[b]ecause Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that plaintiff abandoned his negligence claim because he failed to delineate that claim in his brief in opposition to summary judgment); *Anglers of the Au Sable v. United States Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment."). Therefore, Davis has effectively abandoned all of her claims. However, because the filings of a *pro se* plaintiff are liberally construed, the Court will nevertheless address Davis's claims below. *See Spott v. United States*, 429 F.3d 248, 250 (6th Cir. 2005).

**B. Race and Sex Discrimination**

*1. EEOC/OCRC Charge*

The Court finds that Davis has waived her sex discrimination claim because she failed to allege it in her Charge filed on May 20, 2009. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). In order for federal courts to have subject matter jurisdiction over Title VII claims, the claimant must first unsuccessfully pursue administrative relief. *Id.* at 545; *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992).

The Sixth Circuit has followed other courts in holding that if a claimant does not first present a claim to the EEOC, that claim may not be brought before a district court. *Ang*, 932 F.2d at 545; *see also Jackson v. Ohio Bell Telephone Co.*, 555 F. Supp. 80, 83 (S.D. Ohio 1982) ("…a Title VII litigant's assertion of discriminatory conduct in [district court] is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination") (citations and internal quotations omitted).

Davis does not contest that she failed to bring a sex discrimination claim with the OCRC or the EEOC, and her Complaint acknowledges that her Charge only alleges race discrimination and retaliation. (Dkt. # 2 ¶ 6a; Dkt. # 26-2 at 8.) Therefore, Davis has failed to exhaust her administrative remedies and the Court is without jurisdiction to hear this particular claim. Moreover, even if Davis had properly presented her sex discrimination claim to the OCRC/EEOC, her claim still fails for the reasons stated below.

### 2. Title VII

Title VII prohibits employers from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Davis has offered no direct evidence of discrimination. In the absence of such evidence, a plaintiff may prove her claim through circumstantial evidence according to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Davis must first establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position,

and (4) she was replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees. *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). "Establishing a *prima facie* case creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Carter*, 349 F.3d at 273 (citations and quotations omitted). To establish such pretext, a plaintiff must show that the proffered reason: (1) had no basis in fact, (2) did not actually motivate his discharge, or (3) was insufficient to motivate discharge. *Id.* at 274 (citing *Seay v. TVA*, 339 F.3d 454, 463 (6th Cir. 2003)).

While Davis is a member of two protected classes (female and African American) and was suspended and demoted, the Court finds that she cannot establish a *prima facie* case of discrimination because there is no genuine question of material fact as to whether she was treated differently than similarly situated non-protected employees.[1] For an employee to be similarly situated, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Parries v. Makino, Inc.*, 122 Fed. Appx. 826, 830 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. Ohio 1992)). The comparison need not involve identical misconduct, but the

---

[1] Because the Court finds that the record does not establish a genuine question of material fact as to whether Davis was treated differently than similarly situated non-protected employees, it need not reach the issue of whether Davis can satisfy the third prong of a *prima facie* case, whether she was qualified for the position.

misconduct must be of comparable seriousness.  *Id.* (citing *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 659 (6th Cir. 1999)).

Therefore, in order to avoid summary judgment on this issue, the record must present a genuine question of material fact as to whether any other Revol employee is an employee who: (1) is outside of Davis's protected group, (2) dealt with the same supervisor as Davis, (3) was *subject to the same standards* and *engaged in conduct of comparable seriousness* to Davis's conduct, and (4) was treated differently than Davis.

Davis has not identified an employee, including Chamberlin, who meets all of these requirements.  While Chamberlain is a Caucasian male, Revol cites five undisputed reasons why he is not similarly situated to Davis: (1) he was due to be laid off when the discipline occurred and was in fact terminated on June 1, 2009; (2) he was not being promoted into a supervisory position; (3) he was not paid commissions from, and thus did not receive a financial benefit from the restocking scheme; (4) he did not participate in the scheme as often and as heavily as Davis; and (5) he did not react in an unusual manner, as Davis did, when he was informed of Revol's potential disciplinary action.

Chamberlain was therefore not subject to the same standards as Davis, an Assistant Manager, and Chamberlain engaged in conduct less severe than Davis.  Moreover, Revol has articulated legitimate, nondiscriminatory reasons for suspending and demoting Davis and requiring her to submit to a drug test—namely, Davis's substantial involvement in the restocking scheme and her unusual reaction to learning of her potential discipline.  While Davis has alleged a dispute over the facts upon which her disciplinary action was based (without support), she has failed to present any evidence that demonstrates that Revol "did not honestly believe in the

proffered non-discriminatory reason for its adverse employment action." *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (citations and quotations omitted). For all of these reasons, Davis cannot show race or sex discrimination under Title VII.

**C. Retaliation**

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that she engaged in protected activity; (2) that her employer had knowledge of her protected conduct; (3) that her employer took an adverse employment action towards her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (citing *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007).

The burden of proof at the *prima facie* stage is "minimal." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). The plaintiff need only put forth some credible evidence that enables the trial court to deduce that there is a causal connection between the protected activity and the retaliatory action. *Id.* To establish a causal connection, the plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Id.* (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990). However, proximity in time between an employee's protected conduct and an employer's adverse action is insufficient to demonstrate retaliation. *See Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). Moreover, acts performed prior to engaging in a protective activity cannot constitute retaliation. *Nickell v. Memphis Light, Gas & Water Div.*, 76 Fed. Appx. 87, 89 n.2 (6th Cir. 2003).

In the instant case, Davis filed her Charge weeks after the alleged discriminatory acts. Even assuming *arguendo* that her protected activity occurred during the telephone conversation with Patton on May 6, 2009, Davis has not put forth material facts to demonstrate that there was a causal connection between her allegations of discrimination and her suspension, demotion, or drug testing. Davis has not produced any evidence from which one could conclude "that the adverse action would not have been taken had the plaintiff not" engaged in protected activity. *City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Because Davis has failed to show any facts other than proximity of events, she cannot prevail on her retaliation claim.

### D. Negligent Retention and Intentional Infliction of Emotional Distress

While the Court's supplemental jurisdiction allows it to hear Davis's claims of negligent retention and intentional infliction of emotional distress based in Ohio law, the Supreme Court has held that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well," in order to avoid "[n]eedless decisions of state law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Likewise, 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if the court dismisses all claims over which it has original jurisdiction. Therefore, because this Court dismisses Davis's Title VII claims, it does not retain subject matter jurisdiction to interpret Ohio law in order to determine Davis's claims of negligent retention and intentional infliction of emotional distress.

**V. CONCLUSION**

For the foregoing reasons, Revol's Motion for Summary Judgment is hereby **GRANTED**.  (Dkt. # 26.)  The Court **DIRECTS** the Clerk to enter judgment against Tiffany Davis.

**IT IS SO ORDERED.**

/s/ Peter C. Economus – April 18, 2011
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**
